UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION


| | |
|---|---|
| RICKEY MCFARLIN | CIVIL ACTION NO. 12-3033 |
| VERSUS | JUDGE ROBERT G. JAMES |
| NEW HAMPSHIRE INSURANCE CO., ET AL. | MAG. JUDGE KAREN L. HAYES |


RULING

This is a personal injury and products liability action. Plaintiff Rickey McFarlin ("McFarlin")

has sued Defendants Lee Allen Wyffels ("Wyffels"); Dealer's Choice Truckaway System, Inc.

("Dealer's Choice"); and Dethmers Manufacturing Co., individually and doing business as Demco

Products ("Demco"), for damages he allegedly suffered as the result of an automobile accident.

Before the Court is McFarlin's Motion for Partial Summary Judgment [Doc. No. 84] against

Demco. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.      FACTS AND PROCEDURAL HISTORY

On March 4, 2012, McFarlin and Wyffels were involved in an automobile accident. On the

day of the accident, Wyffels was driving a Mack semi-tractor truck and towing his car, a Mazda 626

("Mazda"), behind it on Interstate 20. McFarlin asserts that Wyffels used a tow bar and safety cables

to tow the Mazda. He further alleges that Demco manufactured the tow bar and safety cables.[1]

At some point, Wyffels felt a tug coming from the back of the truck. He checked his rear-

---

[1]No photos of the tow bar were taken at the accident scene. There are partial photographs of the cables, which Demco admit appear similar to those it manufactures. However, Demco does not admit it manufactured the tow bar or cables Wyfells used to transport the Mazda.

view mirror, finding the Mazda still in tow. Then, not more than three seconds later, he felt another tug, causing him to slow down. Upon slowing down, he noticed that the Mazda had disconnected from the semi-truck. When the Mazda disconnected, Wyffels was operating in the left lane of traffic on I-20, a four-lane interstate highway. Rather than pull over on the shoulder, he slowed down in the left lane of traffic and was rear ended by McFarlin.

In late 2012, McFarlin filed suit in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. The Petition named Wyffels; Wyffels' alleged employer, Dealer's Choice; and Dealer's Choice's insurer, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") as defendants.[2] The suit maintained that Wyfells' negligence caused McFarlin's injury and that this negligence occurred as Wyffels was acting within the course and scope of his employment with Dealer's Choice. The Petition further alleged that National Union provided insurance coverage to Dealer's Choice for any potential liability it might suffer as a result of Wyffels' negligence.[3]

The case was subsequently removed to federal court, and McFarlin amended his Petition to add Demco and its insurer, Gemini Insurance Co., as Defendants, alleging that Demco manufactured a "Kwik-Tow" tow bar and accompanying safety cables that Wyffels used to transport the Mazda. [Doc. No. 20; Doc. No. 48]. McFarlin's suit against Demco is based on the Louisiana Products Liability Act ("LPLA"). The suit asserts that the tow bar and safety cables were rendered unreasonably dangerous because, at the time they left Demco's control, they deviated in a material way from the manufacturer's specification or performance standards. [Doc. No. 20, p. 4].

---

[2]National Union was erroneously named in the Petition as New Hampshire Insurance Company.

[3]McFarlin has settled his claims with National Union, and it is no longer a party to this litigation.

On June 26, 2015, McFarlin filed a Motion for Partial Summary Judgment [Doc. No. 84] averring that no genuine dispute of material fact exists as to whether: (1) Demco is the "manufacturer" of the "Kwik-Tow" tow bar as that term is defined in the LPLA; (2) Demco is the "manufacturer" of the accompanying safety cables as that term is defined in the LPLA; and (3) Demco manufactured the tow bar and safety cables Wyffels used to transport the Mazda on March 4, 2012. Demco filed a response [Doc. No. 90] on July 27 admitting it met the LPLA's definition of "manufacturer" with respect to the "Kwik-Tow" tow bar and accompanying safety cables. [Doc. No. 90]. Demco even admits that Wyffels purchased a Demco "Kwik-Tow" tow bar and cables at some point in time, since he has components of the products in his possession. However, Demco argues a material dispute of material fact exists as to whether it manufactured the tow bar and cables Wyffels used to transport the Mazda.

II.    **LAW AND ANALYSIS**

   A.    **Summary Judgment Standard**

A motion for summary judgment requires the court to evaluate "whether there is a need for trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 250 (1986). "The United States Supreme Court has stated that 'this standard mirrors the standard for a directed verdict...which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.'" *Barney v. City of Greenville, Miss.*, 898 F. Supp. 372, 375 (N.D. Miss. 1995) (quoting *Anderson*, 477 U.S. at 250-251).

The Supreme Court has further noted that the "genuine issue" summary judgment standard is very similar to the "reasonable jury" directed verdict standard, the primary difference being procedural, not substantive. *Anderson*, 477 U.S. at 251. "In essence...the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law...the judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id*. at 251-52.

Finally, in considering a motion for summary judgment, the court must view the evidence through the prism of the substantive evidentiary burden. *Id.* at 254. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honroe v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). "summary judgment is appropriate, however, once the movant has met its burden, '[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Ulrich v. Exxon Co., U.S.A.,* 824 F.Supp. 677, 681 (S.D. Tex. 1993) (quoting *Matsushita*, 475 U.S. at 587).

**B.      Demco as the Manufacturer of the "Kwik Tow" Tow Bar and Accompanying Safety Cables**

McFarlin first asks this Court to determine that Demco manufactures the "Kwik-Tow" tow bar and accompanying safety cables within the meaning of the LPLA.

For a claimant alleging a defective product caused injury, the LPLA provides an exclusive

remedy. *See Jefferson v. Lead Industries Ass'n, Inc.*, 930 F.Supp. 241, 243 (E.D. La. 1996). To maintain a successful action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is the manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002).

Manufacturing a product means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning, or refurbishing a product. LA. REV. STAT. § 9:2800.53. "The LPLA's definition of manufacturer is not limited, however, to those who actually manufacture a product; one 'who labels a product as his own or who otherwise holds himself out to be the manufacturer of a product' is also considered a manufacturer of the product." *Chevron USA v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010) (quoting LA. REV. STAT. § 9:2800.53(1)(a). "[W]hen the distributor's actions give the buying public a basis to assume that it may be the manufacturer of a product it distributes, a jury will usually be within its province to conclude that the distributor held itself out as the product's manufacturer." *Chevron USA*, 604 F.3d at 897.

Here, Demco freely admits that it is the "manufacturer" of the "Kwik-Tow" tow bar and safety cables as the LPLA defines that term. But McFarlin's motion cannot be "granted simply because there is no opposition . . ." *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). The moving party "still has the initial burden, under Rule 56(c), of showing the absence of a genuine issue concerning any material fact, and of showing that judgment is warranted as a matter of law." *John v. State of La. (Board of Trustees for State*

*Colleges and Universities)*, 757 F.2d 698, 708 (5th Cir. 1985). However, the Court may accept the

movant's description of the undisputed facts as *prima facie* evidence of its entitlement to judgment.

*Eversley*, 843 F.2d at 173-74.

In this case, ample evidence, including deposition testimony, demonstrates that Demco

designed the "Kwik-Tow" tow bar. *See* [Doc. No. 84-3, Deposition of Russell Mark Ensz, p. 8-9].

Further, it is uncontested that Demco held itself out as the manufacturer of the accompanying cables

and thus, is considered to be their manufacturer under the LPLA. *See* LA. REV. STAT. §

9:2800.53(1)(a).  Because there is no genuine dispute of material fact concerning the issue,

McFarlin's Partial Motion for Summary Judgment is GRANTED to the extent it seeks a finding that

Demco manufacturers the "Kwik-Tow" tow bar and safety cables within the meaning of the LPLA.

> **C.**      **Wyfells' use of a Demco "Kwik-Tow" Tow Bar and Accompanying Safety Cables to Tow the Mazda.**

The only real point of contention is whether Demco manufactured the tow bar and safety

cables Wyffels actually used to tow the Mazda. Notably, McFarlin is not asking for a summary

judgment on the condition of the tow bar and cables at the time of the accident. Nor does he ask this

Court to find the tow bar and cables were unmodified at the time of the accident. Instead, McFarlin

seeks a finding that the tow bar and cables Wyffels used to transport the Mazda were Demco

products. In support of this assertion, McFarlin offers Wyffels' testimony in which he claims Demco

manufactured the tow bar and cables he was using at the time of the accident.[4]

----

[4]McFarlin also points to the following deposition testimony, contending Demco admitted
manufacturing the tow bar Wyffels used to transport the Mazda:

Q.      All right–the tow bar–the subject tow bar we're dealing with, who
        manufactured that tow bar?
A.      Demco.

Nevertheless, Demco is unwilling to concede this fact. Demco admits that Wyffels had, at some point, acquired a Demco "Kwik-Tow" tow bar and accompanying cables. However, Demco maintains that a genuine issue of material fact exists as to whether Wyffels used those products to transport the Mazda. Demco offers no direct evidence to refute Wyffels' testimony; instead, Demco argues that credibility concerns and a failure to preserve evidence serve to create a genuine issue of material fact. McFarlin counters that attacking a witness' credibility without reason cannot alone present questions of material fact. Further, McFarlin points out that Wyffels' bad faith must be proven in order for there to be any adverse inference against the destroyer of evidence.

In this case, Demco can defeat McFarlin's motion without the Court having to delve into the spoilation issue. Credibility issues taint Wyffels' testimony, and that testimony is the only direct evidence McFarlin offers to demonstrate that Demco manufactured the tow bar and cables Wyffels used to transport the Mazda. As the Fifth Circuit has noted, summary judgment is inappropriate when a nonmovant adequately calls a key witness' credibility into question. *See Thomas v. Great*

---

Q.    Okay. And when Demco would get that coupler in and atta–attach the legs and the–the other apparatus to attach to the car, would Demco put its own labels on the tow bar?
A.    Yes.
Q.    And Demco would hold itself out to be the manufacturer in the labeling system?
A.    Yes.
Q.    Okay. So Demco labeled the–the subject tow bar as its tow bar?
A.    Yes.
Q.    And Demco would represent to the public that it was the manufacturer of the tow bar?
A.    Yes.

[Doc. No. 84-3, Deposition of Russell Mark Ensz, p.4]. This testimony's probative value is directly correlated to Wyffels' credibility. No photographs of the tow bar were taken at the accident scene. Thus, the only direct proof that the tow bar shown to Demco's representative was the same tow bar Wyffels used to tow the Mazda comes from Wyffels himself.

*Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000);  *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 81 (5th Cir. 1987).  This is especially true when, as is the case here, the witness' testimony constitutes the bulk of the moving party's evidence on an issue. *See Lodge Hall Music, Inc.*, 831 F.2d at 81.

In *Lodge Hall*, the plaintiffs sued a night club for copyright infringement, alleging that the nightclub had played their copyrighted songs without authorization. *Id.* at 78.  In support of a motion for summary judgment, the plaintiffs offered affidavit testimony from private investigators claiming the club played the copyrighted songs between 10 and 11 p.m. *Id.* at 81. The affidavit also stated that the investigators stayed at the club until 1:35 a.m. *Id.* at 80.  Defendants challenged the motion by offering deposition testimony from a witness claiming the club closed at midnight, making the assertion that the investigators had stayed until 1:35 a.m. an impossibility. *Id.* at 81.

The Plaintiffs argued this evidence was insufficient to overcome their motion for summary judgment because it did not contravene the fact that the copyrighted songs were played. *Id.* That argument failed to persuade the court. Rather, the court held that the testimony, if proven, would call the credibility of the plaintiffs' key witnesses into question so as to defeat plaintiffs' motion for summary judgment:

> While the mere claim that an affidavit is perjured is insufficient, where specific facts are alleged that if proven would call the credibility of the moving party's witness into doubt, summary judgment is improper...This is especially so where the affidavit alleged to be perjured is an essential element of the plaintiff's case and is not corroborated by other evidence.

*Lodge Hall Music, Inc.*, 831 F.2d at 81.

In the instant case, Demco's argument goes beyond conclusory assertions that Wyffels' testimony is perjured; it introduces specific facts and evidence that, if believed, introduce a genuine

8

issue of material fact. For example, Demco points out that in his deposition testimony, Wyffels testified that he was using the tow bar in its original configuration and good repair at the time of the accident. However, he also admits to using the tow bar 200-300 times before the accident and that the tow bar was "pretty scuffed up over the years." [Doc. No. 90-2, Deposition of Lee Allen Wyffels, p. 3]. Wyffels also claims that the cables were in good condition when used and that they broke after the couple separated from the hitch ball. However, none of the police officers at the scene recall any broken cables, nor does the police report mention broken cables. [Doc. No. 91, Depositions of Corporal Justin Hattaway; Officer John Thomas Garrett; Officer Marcus Yarbough, p.59-71]. Moreover, according to Demco's expert, the cables shown in the scene photograph are tightly coiled, which they would not be if stressed to breaking point in original condition. [Doc. 91, Affidavit and report of Mark Leonard, p.55-57]. Finally, Wyffels claims that after the accident, he sold the security cables to Perlow Salvage, but Perlow Salvage has no record of dealing with him. [Doc. No. 91, Deposition of Sally Ann Haynie, p.55-57].

While this evidence does not specifically belie Wyffels' assertion that Demco manufactured the tow bar and cables at issue, it calls Wyffels' credibility as a witness into question–a matter of crucial importance because his testimony is the only evidence that Demco manufactured the tow bar and cables that Wyffels actually used to tow the Mazda.

Viewed in the light most favorable to Demco–the nonmoving party–this evidence could cause a reasonable juror to doubt Wyffels' credibility as a witness, making summary judgment based solely on his testimony inappropriate. Accordingly, McFarlin's Motion for Partial Summary Judgment is DENIED to the extent it seeks a finding that Demco manufactured the tow bar and safety cables Wyffels used to tow the Mazda.

## III.    CONCLUSION

For the foregoing reasons, McFarlin's Motion for Partial Summary Judgment [Doc. No. 84] is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent its seeks a finding that Demco manufactures the "Kwik-Tow" tow bar and accompanying safety cables under the LPLA. However, the motion is DENIED to the extent it seeks a finding that Demco manufactured the tow bar and safety cables Wyffels actually used to transport the Mazda on March 4, 2012.

MONROE, LOUISIANA, this 15th day of October, 2015.


_____
**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**