UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **RICKEY MCFARLIN** | **CIVIL ACTION NO. 12-3033** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **NEW HAMPSHIRE INSURANCE CO., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This is a personal injury and products liability action. Plaintiff Rickey McFarlin ("McFarlin") has sued Defendants Lee Allen Wyffels ("Wyffels"); Dealer's Choice Truckaway System, Inc. ("Dealer's Choice"); Dethmers Manufacturing Co., individually and doing business as Demco Products ("Demco"); and Gemini Insurance Co. ("Gemini") for damages he allegedly suffered as the result of an automobile accident.

Pending before the Court is Demco's Motion for Summary Judgment [Doc. No. 99], joined by Gemini [Doc. No. 103], on the issue of liability. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**I.    FACTS AND PROCEDURAL HISTORY**

On March 4, 2012, McFarlin and Wyffels were involved in an automobile accident. On the day of the accident, Wyffels was driving a Mack semi-tractor truck and towing his car, a Mazda 626 ("Mazda"), behind it on Interstate 20 ("I-20"). Wyffels used a tow bar and safety cables to tow the Mazda. McFarlin alleges that Demco manufactured the tow bar and safety cables.[1]

---

[1] No photos of the tow bar were taken at the accident scene. There are photographs which partially show the broken cables.

At some point, Wyffels felt a tug coming from the back of the truck. He checked his rear-view mirror, finding the Mazda still in tow. Then, not more than three seconds later, he felt another tug, causing him to slow down. Upon slowing down, he noticed that the Mazda had disconnected from the semi-truck. When the Mazda disconnected, Wyffels was operating in the left lane of traffic on I-20, a four-lane interstate highway. Rather than pull over on the shoulder, he slowed down in the left lane of traffic and was rear ended by McFarlin.

In late 2012, McFarlin filed suit in the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana. The Petition named Wyffels; Wyffels' alleged employer, Dealer's Choice; and Dealer's Choice's insurer, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") as Defendants.[2] The suit maintained that Wyfells' negligence caused McFarlin's injury and that this negligence occurred as Wyffels was acting within the course and scope of his employment with Dealer's Choice. The Petition further alleged that National Union provided insurance coverage to Dealer's Choice for any potential liability it might suffer as a result of Wyffels' negligence.[3]

The case was subsequently removed to federal court, and McFarlin amended his Petition to add Demco and its insurer, Gemini, as Defendants, alleging that Demco manufactured a "Kwik-Tow" tow bar and accompanying safety cables that Wyffels used to transport the Mazda. [Doc. No. 20; Doc. No. 48]. McFarlin's suit against Demco is based on the Louisiana Products Liability Act ("LPLA"). The suit asserts that the tow bar and safety cables were unreasonably dangerous and caused McFarlin's injuries. More specifically, the suit alleges causes of action based on theories of

---

[2]National Union was erroneously named in the Petition as New Hampshire Insurance Company.

[3]McFarlin has settled his claims with National Union, and it is no longer a party to this litigation.

manufacturing defect, design defect, inadequate warning, and failure to conform to an express warranty.

There have been multiple summary judgment motions filed in this case. On October 15, 2015, this Court rendered judgment on the initial motion, finding a genuine issue of material fact as to whether Demco manufactured the tow bar and cables that Wyfells actually used to tow the Mazda. [Doc. No. 94].

On April 26, 2016, Demco filed the instant Motion for Summary Judgment [Doc. No. 99], contending that neither the tow bar nor safety cables were unreasonably dangerous under the LPLA. On April 28, 2016, Gemini adopted Demco's Motion for Summary Judgment.

McFarlin filed a memorandum in opposition on May 17, 2016. [Doc. No. 105]. Demco filed a reply on May 26, 2016. [Doc. No. 109].

**II.     LAW AND ANALYSIS**

    **A.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence

would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

    **B.**    **LPLA**[4]

A successful LPLA plaintiff must demonstrate the following: (1) that the defendant is the manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product "unreasonably dangerous;"

---

[4] This is a diversity case. The parties correctly rely on Louisiana's products liability law. *See* LA. CIV. CODE art 3545.

4

and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) (citing LA. REV. STAT. ANN. § 9:2800.54(A) (West 1997).

Demco has conceded, for purposes of this motion only, that it manufactured the tow bar and safety cables at issue. And the parties do not dispute that Wyfell's use of the products was "reasonably anticipated." The disputes in this motion center on whether the tow bars and/or cables were unreasonably dangerous and, if so, whether the dangerous condition proximately caused McFarlin's damage.

### 1. Defect in Composition or Construction

A product will be unreasonably dangerous under the LPLA if, at the time it left the manufacturer's control, "the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." LA. REV. STAT. ANN. § 9:2800.55 (West 1997). Thus, the statute "imposes two requirements on a plaintiff: (1) establish the manufacturer's specifications or performance standards for the product, and (2) demonstrate how the product materially deviated from those standards rendering it unseasonably dangerous." *Ayala v. Enerco Group, Inc.*, 59 Fed. App'x. 241, 247 (5th Cir. 2014) (citing *Jenkins v. Int'l Paper Co.*, 41,566 (La. App. 2 Cir. 11/15/06); 945 So.2d 144, 150).

"Louisiana jurisprudence holds that under a construction or composition claim, it is the plaintiff's burden 'to demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Hinson v. Techtronic Indus. Outlets, Inc.*, 126

F.Supp. 3d 747, 753 (W.D. La. 2015) (quoting LA. REV. STAT. § 9:2800.54(D); *Morris v. United States Auto. Ass*., 32-528 (La. App. 2 Cir. 2/18/00) 756 So.2d 549, 558).

With respect to the second requirement, courts will not infer a manufacturing defect merely because an accident occurred. *Broussard v. Proctor & Gamble Co.*, 463 F.Supp.2d 596, 610 (W.D. La. 2006), *aff'd* 517 F.3d 767 (5th Cir. 2008). At the summary judgment stage, the plaintiff must rise above speculation and offer evidence to raise a genuine issue of fact as to exactly how the product deviated from its intended design. Expert testimony will often be necessary to meet this standard; however, there is nothing in the LPLA's text which explicitly requires it. *See Gladney v. Milam*, 39,982 (La. App. 2 Cir. 9/21/05); 911 So.2d 366, 370; *Haskins Trucking Inc. v. Goodyear Tire & Rubber Co.*, No. 07-0585, 2008 WL 1775272 at *5 (W.D. La. April 17, 2008) ("a review of the case law involving Louisiana products liability claims reveals that courts generally demand, or at a minimum favor, expert testimony to prove an unreasonably dangerous defect in composition or design of a product.").

In this case, Demco argues that McFarlin's claim must fail because he does not demonstrate *how* the products deviated from their specifications. McFarlin argues that the tow bar and cables are defective simply because they failed. He cites no expert testimony or other evidence identifying the unreasonably dangerous condition that caused the product to fail. Accordingly, barring the application of *res ipsa loquitur*, McFarlin cannot survive summary judgment on this claim.

*Arant v. Wal-Mart Stores, Inc.*, 13-2209, 2015 WL 1419335 (W.D. La. March 26, 2015) *aff'd* 628 Fed. App'x. 237 (5th Cir. 2015), is directly on point. In *Arant*, the plaintiff purchased two 1" ratchet straps used to secure a lock-on tree stand to a tree for hunting. However, the straps failed, causing the plaintiff to fall and suffer serious injuries. In opposition to a motion for summary

judgment, the plaintiff failed to submit any expert or other testimony showing how the product deviated from its intended design. Instead, the plaintiff argued that the product was defective because it did not work. The district and appellate courts rejected that argument. The district court reasoned that:

> [T]he LPLA requires that Arant establish what specific unreasonably dangerous characteristic of the ratchet straps was the underlying cause of their failure. To put it another way, the parties agree that Arant fell out of his tree stand and onto the ground because the ratchet straps failed. The question for this Court on summary judgment, however, is whether the Plaintiff has made a showing sufficient to establish the existence of an unreasonably dangerous characteristic of the ratchet straps that caused them to fail.

*Arant*, 2015 WL 1419335 at *3

Like *Arant*, this case presents an issue of a breaking product–the safety cables. Both experts agree in this case that the mode of failure of the cables cannot be determined.[5] Nor does McFarlin point to any evidence as to how the tow bar deviated from its intended design or specifications. Thus, any finding of an unreasonably dangerous condition with respect to the tow bar or safety cables would be based on speculation which arises entirely from the fact that the product failed.

In response, McFarlin points to *Thibodeaux v. Ford Motor Co.*, 54 Fed. App'x. 591 (5th Cir. 2002), an LPLA case involving an airbag that failed to properly deploy. According to McFarlin, *Thibodeaux* demonstrates that showing a deviation from a product's performance standards is enough to find liability under the LPLA–even without showing exactly how the product deviated from those standards. The Fifth Circuit in *Thibodeaux* found that the plaintiff had proven his

---

[5]McFarlin's expert listed three possible causes of the cable breakage (1) deviancies in the backfold mechanical splice; (2) a reduction in the strength of the cables by corrosion; (3) wear of the cables over time." The report provides no opinion as to the relative likelihood of any of these causes in this case. Indeed, McFarlin's expert testified that "the involved cables were not retained after the accident. **Thus, the mode of failure cannot be determined**." [Doc. No. 99-2, p. 7] (emphasis added).

manufacturing defect in that case when the parties stipulated that the airbag should have deployed under the circumstances, and three eyewitnesses testified that the airbag did not deploy, even though it was unclear why the product failed.

*Thibodeaux* is distinguishable from *Arant* and the instant case. In support of its holding that eyewitness testimony and circumstantial evidence could support a valid LPLA claim, the Court cited *Jurls v. Ford Motor Co.*, 32-125 (La. App. 2 Cir. 1/6/00); 752 So.2d 260, 265, a case which relied on *res ipsa loquitur* to find liability under the LPLA. In *Thibodeaux*–as in *Jurls*–there were no explanations for the products' futility other than a failure to conform to specifications.

In the instant case, McFarlin cannot rely on *res ipsa loquitur* to meet his burden. *Res ipsa loquitur* requires that a plaintiff sufficiently disprove alternative causes of the damage besides the unreasonably dangerous condition of the product. *See Gladney*, 911 So.2d at 371 (the doctrine of *res ipsa loquitur* "is a rule of circumstantial evidence in which negligence is inferred because in common experience the incident would not ordinarily occur in the absence of negligence. However, if there is an equally plausible explanation for the occurrence, the doctrine is not applicable."). McFarlin has not succeeded in that regard. There are multiple reasons the product may have failed, including corrosion and wear and tear. The evidence does not demonstrate that product failure is substantially more likely to have caused the accident than other causes. Thus, a reasonable jury will not be able to be able to determine that McFarlin's injuries were more probably than not caused by manufacturing defect in the cables or tow bar.

For those reasons, Demco's Motion for Summary Judgment is GRANTED with respect to the manufacturing defect claim, and that claim is DISMISSED WITH PREJUDICE.

### 2. *Design Defect*

A product is defective in design if, at the time the product left its manufacturer's control:

(1) there existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) the likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design of the utility of the product.

LA. REV. STAT. § 9:2800.56.

The first element requires that the claimant prove that the alternative design was at least conceived at the time the product left the manufacturer's control "because one of the purposes of the first element 2800.56 is to show the manufacturer has a realistic choice as to design." John Kennedy, A PRIMER ON THE LOUISIANA PRODUCTS LIABILITY ACT, 49 LA. L. REV. 565, 596 (1989).

The second element, often referred to as the risk-utility analysis, usually requires a plaintiff to present evidence "concerning the extent of the risk of that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed alternative design." *Scordill v. Louisville Ladder Group*, LLC, 02-2565, 2003 WL 22427981 at *10 (E.D. La. Oct. 24, 2003); *see also Seither v. Winnebago Indus., Inc.*, 2002-2091 (La. App. 4 Cir. 11/24/04); 853 So.2d 37, 41 (finding no "valid alternative design presented" when the plaintiff's expert "presented merely a concept that was untested, unengineered, and not presented to the jury in any fashion more than mere speculation). However, such a high degree of specificity may be unnecessary when "the product or design feature in question is relatively uncomplicated and must be such that a layman could readily grasp them." *Krummel v. Bombardier Corp.*, 206 F.3d 548, 552 n. 4 (5th Cir. 2000) (citations

omitted).

Here, McFarlin argues that a reasonable alternative design was available. Specifically, McFarlin argues that Demco could have used straight cables from the towing vehicle to the towed vehicle–as opposed to the coiled cables which came with McFarlin's tow bar. Coiled cables, unlike straight cables, could, potentially, wrap around the tow bar at such a sharp angle as to break the cables. Demco did in fact implement this design after McFarlin's accident but before this suit. Thus, McFarlin–in what appears to be a risk-utility analysis–argues the alternative design was not cost prohibitive.

However, this cursory risk-utility analysis falls short of establishing an issue for trial. Whether the alternative design was cost prohibitive is only part of the risk-utility analysis. A proper risk-utility analysis encompasses more than just cost assessment. It also questions the riskiness of the product to begin with and whether that risk so outweighed the burden of implementation of an alternative design as to mandate the use of the alternative design. *See Scordill*, 2003 WL 22427981 at *10 (finding summary judgment appropriate on design defect claim where "plaintiffs failed to present evidence 'concerning the extent of the risk that the alternative design would have avoided, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of [the] proposed alternative design.'") (citation omitted); *Guilllory v. Pellerin*, 07-1683, 2009 WL 922474 at *3 (W.D. La. March 31, 2009) ("there is no competent summary judgment evidence in the record pertaining to the frequency of similar accidents, the costs of these accidents, or the effect any proposed alternative design would have in reducing the frequency of such accidents.").

Here, McFarlin offers no evidence on proximate causation, which would require him to

establish "with reasonable certainty that all other alternatives are impossible." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 n. 5 (5th Cir. 2002) (citation omitted); *see also Haskins Trucking, Inc.*, 2008 WL 1775272 at *6 (dismissing design defect claim where plaintiff failed to account for other potential causes of the product failure). McFarlin's briefing is silent on whether the failure to adopt the alternative design is more likely to have caused his injury than other potential causes of injury in this case. Because McFarlin fails to conduct a proper risk-utility analysis and because he fails to introduce any evidence on causation, Demco's Motion for Summary Judgment with respect to the design defect claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### 3. *Inadequate Warning*

A product may also be unreasonably dangerous "because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." LA. REV. STAT. § 9:2800.57(A) (West 1997).

However, no warning will be necessary where (1) the product is not dangerous to an extent which should be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristic; or (2) the user or handler already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic. *Id* at § 9.2800.57(B).

Courts have applied a similar risk-utility analysis when assessing whether a manufacturer has a duty to warn:

> In both design defect and failure to warn cases courts have applied a risk-utility analysis to

determine liability. A court must first determine what risk, if any, the product created. A court must then determine whether a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. In applying the risk-utility analysis, we have said that a plaintiff must show evidence "concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alterative design."[6]

*Krummel*, 206 F.3d at 551 (internal citations omitted) (no failure to warn claim where plaintiff failed to introduce evidence as to the frequency of accidents caused by the supposedly dangerous quality).

However, as is the case with design defects, the plaintiff does not need to, in every case, introduce evidence that details and quantifies the risk avoided and the burden incurred in order to prevail. In some cases, common sense can fill in the gaps in the plaintiff's case.

When assessing whether the failure to warn proximately caused the plaintiff's injury, "a mere allegation of inadequacy" is insufficient for a plaintiff to survive summary judgment. *Broussard*, 463 F.Supp.2d at 609-10. A plaintiff must offer some evidence of the warning that should have been given and how such a warning would have prevented the injury. *Id*. Finally, in cases in which evidence shows the plaintiff failed to read or heed the already-available instructions, causation will be difficult, if not impossible, to establish.

McFarlin claims two failures to warn. The first relates to the base plate, a metal structure

---

[6]The dissent in this case strongly objected to a risk-utility analysis in the inadequate warning context. The LPLA's provisions on inadequate warning do not explicitly require a risk-utility analysis. Rather, they require that the manufacturer use reasonable care. However, it seems that a risk-utility analysis is inherent in the reasonable care inquiry. John Kennedy, in his influential law review article, A PRIMER ON THE LOUISIANA PRODUCTS LIABILITY ACT, argues for just such an approach. *See* 49 La. L. Rev. at 617 (noting that courts should consider the likelihood and gravity of the danger as well as the then-existing economic practicality of implementing the warning when assessing reasonable care in failure to warn claims); *see also* RESTATEMENT (THIRD) OF PRODUCT LIABILITY § 2 cmt. a. (stating that in both design defect and inadequate warning cases, "some sort of independent assessment of advantages and disadvantages, to which some attach the label 'risk-utility' balancing is necessary." ).

mounted on the car, to which the tow bar arms and security cables are attached. Demco's expert testified that a possible cause of the accident was McFarlin's failure to mount the base plate at a proper height. Seizing on that testimony, McFarlin claims that a potential reason for the accident was "external wear from the base plate being too low" which would cause damage that weakened the cables. [Doc. No. 105, p. 20]. According to McFarlin, Demco should have warned of the proper height at which to mount a base plate.

First, the Court notes that McFarlin offers no evidence concerning the frequency of accidents which occur because of inadequate base plate height. Nor is there any effort to discuss the potential economic repercussions of the desired warning. This is problematic: whether the product has a dangerous characteristic in this context depends, in part, on a risk-utility assessment which McFarlin fails to conduct.

Additionally, Demco argues that McFarlin's argument creates a paradox: Wyfells did not follow instructions to wrap the cables around the tow bar arms which may have prevented the cables from brushing the ground, yet, McFarlin would have followed instructions to attach the baseplate a specified height if they had been given. The argument has merit. Courts have found that a plaintiff's failure to heed already-present instructions or warnings on a product can stymie the causal connection between the alleged failure to warn and the injury. *See Hinson*, 126 F.Supp.3d at 757 (finding no causation in failure to warn case where plaintiff did not heed already-present instructions). Accordingly, in this case, because Wyfells did not follow instructions that may have prevented the very same issue, the desired warning would not have prevented the accident.

Overall, the first failure to warn claim cannot survive summary judgment given McFarlin's failure to conduct any type of risk-utility analysis as well the causation issues. Accordingly,

Demco's Motion for Summary Judgment with respect to McFarlin's first failure to warn claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

McFarlin brings a second failure to warn claim, this time under the premise that Demco had a duty to warn that cables may weaken with use because of abrasion, fraying, rust, and kinking. Demco, in response, reminds the Court that the product manual already instructed users to look for and replace worn parts. Thus, Demco effectively provides the very warning McFarlin seeks. Accordingly, Demco's Motion for Summary Judgment with respect to the second inadequate warning claim is GRANTED, and that claim is also DISMISSED WITH PREJUDICE.

### 4. *Failure to Conform to Express Warranty*

A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue. LA. REV. STAT. § 9.2800.58. To survive summary judgment on this claim, "a plaintiff is required to demonstrate, or provide evidence to create a genuine issue of material fact regarding the following: (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue. *Caboni v. General Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2000) (citations omitted).

The LPLA defines an express warranty as "a representation, statement of alleged fact or promise about a product or its nature, material, or workmanship that represents, affirms, or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities

or will meet a specified level of performance. 'Express warranty' does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty." LA. REV. STAT. ANN. § 9:2800.53(6).

The Court finds that summary judgment is inappropriate on the express warranty claim for both the tow bar and the safety cables. First, Demco issued an express warranty that the tow bar could tow items weighing less than 5,000 pounds. Demco's representative admitted this during his deposition:

> A. Under normal operating conditions, it should be able to pull a 5,000 pound vehicle, yes.
>
> **Q. And Kwik-Tow stands behind that–or Demco stands behind that declaration?**
>
> **A. That's our advertised declaration, I guess, yes.**

[Doc. No. 105, Tim Lammers Depo, Exh. E] (emphasis added).

Demco also issued an express warranty with respect to the accompanying safety cables. Specifically, Demco claimed that these cables were rated at 14,000 pounds. *Id.*

These advertised declarations constitute express warranties they are "statement[s] of alleged fact...that represents...that the...product ...will meet a specified level of performance." LA. REV. STAT. § 9:2800.53(6).

Next, Wyfells testified that the warranty induced him to buy the tow bar which included the safety cables:

> Q. It was your understanding that the safety cables would hold up to 5,000 pounds?
>
> A. I assumed that since the tow bar was rated at 5,000 pounds, that the cables that came with it would also be rated at 5,000 pounds, or maybe more.
>
> **Q. And because of that representation, that's what induced you to buy this**

        **particular tow bar?**

A.    **That's correct.**

[Doc. No. 105, Lee Wyfells Depo, Exh. C] (emphasis added).

    Next, there is at least a genuine issue of material fact as to whether the products failed to live up to the warranties. The undisputed evidence shows that the Mazda weighed far less than 5,000 pounds, yet became separated from the towing vehicle. The only question is whether it was being towed under normal operating conditions. However, McFarlin raises a genuine issue of material fact by testifying that he followed the manufacturer's instructions for installation and use.

    In the express warranty context, as opposed to the manufacturing defect context, why or how the product deviated from the warranty is irrelevant. Moreover, unlike the design defect and failure to warn theories of recovery, the express warranty theory of recovery does not require or favor a risk-utility analysis. The only question is whether the product lived up to the manufacturers's promise. In this case, the promise was that the tow bar and cables would allow the user to tow a vehicle weighing up to 5,000 pounds under normal operating conditions. There are questions as to whether these products met that standard.

    Turning to the causation inquiry, assuming the cables and tow bar did in fact fail, that failure was likely the cause of the wreck. Neither party appears to contest that the accident occurred because, for some reason, the towed vehicle separated from the towing vehicle on I-20. At the least, a factual issue is present, making summary judgment inappropriate.

    Demco responds that it disclaimed any express warranties through language contained in the operator's manual. The following disclaimer appeared in the operator's manual:

> TO THE EXTENT PERMITTED BY APPLICABLE LAW, THIS PRODUCT IS SOLD WITHOUT ANY IMPLIED WARRANTIES. IN PARTICULAR, DEMCO MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE EXPRESS WARRANTY CONTAINED IN THIS OWNERS MANUAL, IS THE SOLE AND EXCLUSIVE WARRANTY AVAILABLE TO THE PURCHASER.

[Doc. No. 99-2].

Demco contends that Louisiana Civil Code article 2548 governs the effectiveness of the warranty. Under that article, "the parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer." LA. CIV. CODE art. 2548. According to Demco, Wyfells admitted to reading the entire product manual, thus, the above disclaimer was brought to his attention.

On the other hand, McFarlin points to a number of cases which suggest that "[a] manufacturer's warranty limitation provisions in documents such as car owner's manuals that are delivered to the buyer without calling attention to, and obtaining the buyer's express consent to, the limitations, have been held to be unenforceable."[7] *Hale Farms, Inc. v. A. Cyanide Co.*, 586 So.2d 537 (La. 1991) (citing *Medina Pro. Consult., Inc. v. Mercedez-Benz of N.A., Inc.*, 262 So.2d 377 (La. 1972); *Bendana v. Mossy Motors, Inc.*, 347 So.2d 946 (La. App. 4 Cir. 1977)).

Under these facts, when Wyfells was merely presented with a manual, it appears that the disclaimer had to be more specifically brought to his attention. Because there is no indication that

---

[7]Demco objects that these cases all predate the Code revision which produced the current article 2548. That objection, however, is misplaced. The comments to article 2548 specifically indicate that it does not revise the law.

it was, the disclaimer defense is insufficient to entitle Demco to summary judgment on this claim.[8]

Accordingly, Demco's Motion for Summary Judgment is DENIED on McFarlin's express warranty claim.

### III. CONCLUSION

For the foregoing reasons, Demco's Motion for Summary Judgment, joined by Gemini, is GRANTED IN PART and DENIED IN PART. To the extent Defendants seek dismissal of McFarlin's manufacturing defect, design defect, and inadequate warning claims, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. The motion is otherwise DENIED.

MONROE, LOUISIANA, this 30th day of June, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[8] It is also unclear whether this article even applies in the LPLA context. It specifically speaks of waiving *redhibitory* defects, not those founded in tort. However, the Court does not reach that issue in this analysis.